UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SUMINTRA SHIED,

                        Plaintiff,

     -against-

UNITED CEREBRAL PALSY OF NEW YORK
CITY, INC. and LOCAL 2, UNITED FEDERATION
OF TEACHERS, AMERICAN FEDERATION OF
TEACHERS, AFL-CIO,

                        Defendants.
-----------------------------------------------------------X

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11-cv-2262 (CBA)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 13 2012 ★
BROOKLYN OFFICE

**AMON, Chief United States District Judge.**

## INTRODUCTION

Plaintiff Sumintra Shied brings this action against defendants United Cerebral Palsy of New York City ("UCP") and Local 2, United Federation of Teachers, American Federation of Teachers, AFL CIO ("the UFT" or "the Union"). The parties agree that the only claim asserted is a hybrid claim under Section 301 of the Labor Management Relations Act ("LMRA") arising from UCP's termination of Shied's employment in March 2010. See UFT Mem., D.E. #19, at 5; UCP Mem., D.E. #26, at 1; Shied Opp., D.E. #29, at 5. On November 18, 2011, defendants moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim. Shied opposed that motion, and in the alternative, requested leave to amend her complaint. At oral argument on December 9, 2011, the Court granted Shied leave to amend her complaint, and granted defendants leave to renew and supplement their 12(b)(6) motions if they believed the complaint remained insufficient. Shied amended her complaint and defendants thereafter renewed and supplemented their 12(b)(6) motions. See UFT Letter Mot., D.E. #39; UCP Letter Mot., D.E. #36. At oral ar-

gument on May 21, 2012, the Court granted plaintiff leave to file a Second Amended Complaint, and granted defendants leave to renew their motions to dismiss if deemed necessary. Shied has filed her Second Amended Complaint ("SAC"), and defendants have timely renewed their 12(b)(6) motions. *See* SAC, D.E. #46; UFT Letter Mot., D.E. #47. For the reasons set forth below, the motion to dismiss the Second Amended Complaint is denied.

## BACKGROUND

Except where noted, the following background is drawn from the factual allegations in Shied's SAC, which are accepted as true for purposes of reviewing defendants' motions.

Shied worked as a teacher's assistant at UCP, a school for children afflicted with cerebral palsy, for approximately twenty-two years. SAC ¶ 9. During her last several months at UCP, one of Shied's duties was to take care of a particular boy. *Id.* ¶ 11-12. On the morning of March 15, 2010, Shied attempted to get the boy to eat some food that his mother had brought for him. *Id.* ¶ 14. When the boy refused, a teacher who had been observing suggested to Shied that she should not continue trying to get the boy to eat. *Id.* Shied claims that she agreed and stopped. *Id.* Besides Shied and the observing teacher, there were five additional employees in the room at the time: three other teacher's assistants, one nurse, and one speech therapist. *Id.* ¶ 15.

Later that day, Shied was called into the office of the Director of the Brooklyn Children's Program at UCP ("the Director"). *Id.* ¶ 16. Without giving a reason, the Director ordered Shied to leave the premises. *Id.* The following day, March 16, 2010, the Director telephoned Shied and asked her to report to the Director's office. *Id.* ¶ 17. When Shied arrived, "the Director escorted [Shied] to her office in such a way as to ensure that the representative of United Federation did not know that plaintiff was going to the Director's office." *Id.*

Once in the Director's office, Shied requested that a representative of the UFT be present. *Id.* ¶ 19. After this request was denied, an unidentified employee of UCP began interviewing Shied about her efforts to feed the boy the previous day. Specifically, the employee asked whether Shied slapped and force fed the boy. *Id.* Shied replied that she had not. *Id.* At the request of the unidentified UCP employee, Shied signed a statement, which she assumed contained the answers she had given, but which she was not asked to and did not review. *Id.* ¶ 21. Shied claims that she requested a copy of this statement, but the request was denied. *Id.* ¶ 23. She also claims not to have received a "fact sheet" concerning the investigative disciplinary process as required by the CBA. *Id.* ¶ 22; UFT Letter Mot., D.E. 39, ex. A, at 21, App'x B.[1]

A few days later, on March 19, 2010, Shied was again called to come to the Director's office. *Id.* ¶ 24. UCP had apparently requested the presence of a UFT representative for this meeting. *Id.* Shied was terminated in the presence of the Union representative. *Id.* The reason given for the termination was that she had slapped and attempted to force feed the boy. *Id.* ¶ 25. The Director also apparently advised Shied that "the Union could not help her." *Id.* ¶ 24.

Believing that the investigatory interview conducted on March 16, 2010 and her later termination violated the collective bargaining agreement between UCP and the UFT ("the CBA"), Shied requested that the UFT pursue a grievance on her behalf. *Id.* ¶ 27. She provided the UFT with a full account of the events leading up to her termination. *Id.* ¶¶ 37-38. According to Shied, it was the speech therapist in the room on March 15 who alleged that Shied had force fed and slapped the boy. *Id.* ¶ 32. She alleges that this speech therapist believed that Shied was "out to get her boyfriend." *Id.* ¶ 33. Shied claims that after the events of March 15, she spoke with four of the other UCP employees who were in the classroom at the time of the alleged incident—the

---

[1] Although plaintiff does not explicitly state as much, the Court construes her allegation that "[u]pon information and belief, the collective bargaining agreement requires United Cerebral to provide a fact sheet to its employees on the investigative process" as alleging that Shied did not receive the fact sheet.

teacher, the nurse, and two of the teacher's assistants. *Id.* ¶ 28. According to Shied, all four employees told her that they had not witnessed the alleged misconduct; the teacher and the nurse both advised her to obtain counsel, and both teacher's assistants told her that they wrote a letter to UFT on her behalf. *Id.* Based upon these conversations, Shied alleges that each of these four employees advised the UFT that they did not see her force feed or slap the boy. *Id.* ¶¶ 29-31. Shied further alleges, upon information and belief, that the third teacher's assistant falsely advised the UFT that he was not in the room at the time because he did not want to be involved with the dispute. *Id.* ¶ 29.

The CBA, which was submitted by the UFT and which all parties agree the Court may consider in resolving this motion, establishes a grievance process for remediation of employees' claims that UCP has breached the CBA. The process customarily has two steps, but a grievance concerning a termination may begin at step two. UFT Letter Mot., D.E. #39, ex. A, at 22-23. It appears this occurred here, as the first action taken in response to Shied's grievance that is mentioned in the SAC was a "step 2" meeting with UCP's director of human resources. SAC ¶¶ 39-40. The meeting took place several weeks after Shied's termination, and she appeared along with a Union representative. *Id.* ¶ 39. The Union representative neither spoke with Shied before the meeting nor spoke at all during the meeting, and Shied alleges "[u]pon information and belief, this representative knew nothing about the substance of the grievance or had been misinformed as to the nature of the grievance." *Id.* ¶ 41. According to Shied, the HR director told her that her union "could not do anything to help [her]," and explained that two unidentified people had reported her actions to the Director. *Id.* ¶ 42.

The CBA provides that if UCP denies a grievance at step 2, it must inform the Union within ten days, setting forth the reasons for the denial in writing. UFT Letter Mot., D.E. #39, ex. A, at

4

22. The UFT then has fifteen days from receipt of the denial to seek arbitration.[2] *Id.* at 23. According to Shied, however, she heard nothing from the UFT for several months—except that her grievance was being given "serious consideration"—despite weekly inquiries by both herself and her daughter-in-law. SAC ¶¶ 44, 50, 51. In July 2010, she was told that the "legal department" was investigating her grievance and "would not return until September of 2010." *Id.* ¶ 51.

On September 17, 2010, over five months after the step 2 meeting, the UFT told Shied that it would not pursue arbitration. *Id.* ¶ 55. Shied appealed this decision, but was told during the appeal meeting that her grievance had no merit. *Id.* ¶ 57. The UFT's appeal representative allegedly told Shied that it was "six against one," meaning that all six employees in the room at the time of the alleged incident had agreed that the allegations against her were true. *Id.*

Shied claims that the UFT's investigation into and processing of her grievance were merely perfunctory. She claims that despite repeated assurances that her side of the story was being investigated, the Union never intended to undertake a serious investigation. *Id.* ¶¶ 52-54. And although she does not say so explicitly, she insinuates that this was because the speech therapist who reported Shied's alleged abuse was close friends with both the Director and the UFT representative principally responsible for the investigation of Shied's grievance. *Id.* ¶¶ 34-36.

## DISCUSSION

### I. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal on the ground that the complaint "fail[ed] to state a claim upon which relief can be granted." In reviewing a 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and

---

[2] Shied alleges that where a grievance includes an accusation of a "detestable act of abuse against a consumer," the CBA requires the UFT to proceed to arbitration. SAC ¶¶ 47, 61; Shied Letter in Opp., D.E. #42, at 2. UCP and the UFT object strenuously to this reading. Shied's reading strikes the Court as dubious, but there is no need to resolve the question at this stage because the SAC is sufficient even without this allegation.

must draw all reasonable inferences in favor of the plaintiff. *Kittay v. Kornstein*, 230 F.3d 531, 537 (2d Cir. 2000).

In order to survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations," but mere "labels and conclusions" will not suffice. *Twombly*, 550 U.S. at 555. The "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Determining whether a complaint states a plausible claim is "context-specific," requiring the "reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. *Defendants' 12(b)(6) Motions*

All parties agree that the only claim in Shied's complaint is a hybrid claim under section 301 of the LMRA, sometimes called a section 301/duty of fair representation claim. *See* UFT Mem. at 5; UCP Mem. at 1; Shied Opp. at 6. In order to sustain such a claim, a plaintiff must establish both (1) that her employer breached the CBA; and (2) that her union breached its duty of fair representation. *Sanozky v. Int'l Ass'n of Machinists and Aerospace Workers*, 415 F.3d 279, 282 (2d Cir. 2005). Although the two prongs are technically two separate claims, the Supreme Court has made clear that they are "inextricably interdependent." *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 164 (1983).

In essence, Shied theory is that (1) UCP's termination of her employment and the investigation leading up to it breached the CBA; and (2) the UFT, by failing to demand arbitration, breached its duty to consider her grievance promptly and fairly, and to process them on her be-

half through the CBA's dispute resolution procedures. *See Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers*, 34 F.3d 1148, 1153-54 (2d Cir. 1994). As to the first prong, Shied claims that the grounds for her termination were "wholly untrue," and that she was therefore terminated without just cause. SAC ¶ 25. She further claims that UCP deprived her of the right to union representation under *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251 (1975), when it denied her request for a UFT representative at the investigatory meeting on March 16, 2010, SAC ¶ 20. Plaintiff also alleges that UCP breached her rights under the CBA when it failed to provide her a copy of the fact sheet on the investigative process and denied her request to obtain a copy of the statement she signed at the March 16 meeting. *Id.* ¶ 22-23.[3] For purposes of their motions, UCP and the UFT do not argue that Shied has failed to allege a breach of the CBA.

Instead, defendants argue that Shied's claim fails on the second prong because she has not pleaded sufficient factual allegations to establish that the UFT breached its duty of fair representation. UFT Mem. at 5-8; UCP Mem. at 6-8; UFT Letter Mot., D.E. #47 at 4. "[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Sanozky*, 415 F.3d at 282 (quotation marks omitted). As Shied acknowledges, the gravamen of her claim is that the Union acted arbitrarily in failing to adequately process what she argues was a meritorious grievance. Shied Opp. at 7. "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Intern. v. O'Neill*, 499 U.S. 65, 67 (1991) (internal citation and quotation marks omitted). Under this standard, a union is held to have acted arbitrarily when it "ignores or

---

[3] The Court again notes Shied's theory that terminating her for a "detestable act of abuse against a consumer" without arbitration was itself a breach of the CBA. *See* SAC ¶ 47. As explained, the Court need not address whether this reading of the CBA is correct because it finds Shied's SAC is otherwise sufficient to survive defendants' 12(b)(6) motions.

7

perfunctorily presses a meritorious claim," *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 16 (2d Cir. 1993), but it has not breached its duty simply because it "fails to process a meritless grievance, engages in mere negligent conduct, or fails to process a grievance due to error in evaluating the merits of the grievance," *Cruz*, 34 F.3d at 1153-54. To state a claim in this context, a plaintiff generally must establish (1) that she had a meritorious grievance; (2) that the union was aware of the grievance; and (3) that the union acted arbitrarily in failing to process the grievance. *Thomas v. Little Flower for Rehab. & Nursing*, 793 F. Supp. 2d 544, 548 (E.D.N.Y. 2011) (citing *Young v. U.S. Postal Serv.*, 907 F.2d 305, 308 (2d Cir. 1990)).

Taking the facts in the SAC as true and drawing all inferences in Shied's favor, Shied has satisfied this standard. First, the allegations in the complaint sufficiently allege that Shied had a meritorious grievance. She claims that she was terminated based upon the false and unsubstantiated report of a single employee, the speech therapist, SAC ¶¶ 25-33; that none of the other five employees in the room could have corroborated the speech therapist's account of the incident, *id.*; and that UCP denied her union representation, information about the disciplinary investigation, and a copy of her signed statement at the March 16 investigatory meeting, *id.* ¶¶ 18-23, thereby depriving her of a meaningful opportunity to controvert the speech therapist's account.

Second, the allegations in the SAC, taken as true, establish that the UFT was aware of the facts underlying Shied's grievance. She alleges that she provided a detailed account of the events of March 15, 2010, *id.* ¶ 37; that she provided a detailed account of the investigation, *id.* ¶ 38; that four of the other employees present at the time of the alleged incident told the UFT that they could not corroborate the speech therapist's account, *id.* ¶¶ 29-31; and that the last employee claimed not to have been in the room, *id.* ¶ 29. Shied alleges that two of these employees ex-

plicitly told her that they each sent letters to UFT on her behalf. *Id.* ¶ 28. Assuming that these allegations are true, the UFT was aware that Shied was subject to a serious breach of the CBA.

Third, and most importantly, the allegations in the complaint are sufficient to support the inference that the UFT's processing of Shied's grievance was at best perfunctory. Shied claims that her assigned union representative made no attempt to prepare for or to participate in any meaningful way in her step 2 meeting. *Id.* ¶ 41. According to Shied, the Union then failed to convey to her UCP's step 2 decision, *id.* ¶ 44—ordinarily due within ten days of the step 2 meeting, UFT Letter Mot., D.E. #39, ex. A, at 22—and repeatedly brushed aside requests for information with the bare promise that the grievance was under "serious consideration," SAC ¶ 51. The UFT assured Shied in July of 2010, four months after her termination, that it was still investigating the matter, but it did not inform her that it had decided not to pursue arbitration until September 17, 2010, over six months after she lost her job. *Id.* This seems like an inordinate amount of time to process a relatively straightforward grievance, especially considering that the CBA contemplates a far quicker timetable for processing grievances, and provides an expedited process for grieving terminations. UFT Letter Mot., D.E. #39, ex. A, at 22-23. Accordingly, even if the UFT had somehow procured a several-month extension, its seeming lack of urgency in fully investigating and resolving Shied's challenge to her termination supports the inference of arbitrary conduct.

In addition to the above, the allegations in the SAC also suggest that the Union grossly misunderstood the evidence underlying Shied's grievance. As mentioned above, Shied contends that not one other employee could have or did corroborate the speech therapist's allegations. Nevertheless, a UFT appeal representative was apparently under the exact opposite impression, suggesting to Shied that the UFT had not processed her grievance because her story was controvert-

ed "six against one." SAC ¶ 57. Lastly, Shied has provided a plausible reason for the UFT's failures: she alleges that the union representative most involved in processing her grievance was a close personal friend of both the speech therapist—who levied the allegations of abuse—and the Director—who was presumably responsible for the procedural irregularities in the investigation of those allegations. *Id.* ¶¶ 34-36.

Although each of the above factors might not itself be sufficient to state a claim, and although the Union may ultimately provide a rational explanation for failing to process the grievance to arbitration, Shied has made sufficient allegations to survive a motion to dismiss. Similar allegations have survived dismissal. In *Passante v. New York State Nurses Ass'n*, No. 1:10-cv-87, 2010 WL 2425953, at *3 (N.D.N.Y. Jun. 11, 2010), the union had first commenced the grievance process relating to her termination, apparently recognizing that the grievance had merit, but then allegedly failed to notify the plaintiff of the hearings, to conduct an investigation, or to offer any evidence at the grievance hearings. *Id.* In light of the apparent merit of the plaintiff's grievance, the "severity of the consequences," and "the totality of [plaintiff]'s allegations regarding [the union]'s conduct in advancing her grievance," the court denied the motion to dismiss. In *Ciliberti v. Int'l Broth. of Elec. Workers Local 3*, No. 08-cv-4262, 2011 WL 1004899, *1 (E.D.N.Y. Mar. 17, 2011), the court held that plaintiff's allegations that his union representative "stood by without any active involvement" even after hearing three contradictory stories regarding the plaintiff's termination from his supervisors were sufficient. And in *Little Flower for Rehab. & Nursing*, the court denied a motion to dismiss where, although the plaintiff did not explicitly allege a failure to investigate, she did include allegations that the union "not only failed to initiate the grievance process but misled her into believing it was pursuing the grievance on her behalf or negotiating a settlement." 793 F. Supp. 2d at 548.

Defendants argue that many of Shied's allegations are merely conclusory statements not entitled to the presumption of truth. They attack the allegations claiming, upon information and belief, that four employees present at the time of the incident advised the UFT that they had not seen the alleged abuse. They argue that the basis for these claims as alleged by plaintiff—that each of the four employees told her they did not witness any misconduct—is insufficient to support her belief that these employees told the UFT the same. Defendants similarly contest the allegations, also upon information and belief, that the speech therapist, union representative, and the Director are close friends. Defendants argue that, stripped of these allegations, the facts in the SAC are just as consistent with any of a number of lawful explanations—for example, mere negligent misappraisal of Shied's claims—as they are with the inference that the UFT acted recklessly and arbitrarily. In fact, they argue, the SAC actually establishes that the UFT conducted at least some investigation.

The Court is not persuaded that it should, as defendants request, discard each of the allegations made upon information and belief. The Second Circuit has made clear that pleading on the basis of information and belief is appropriate when "matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff." *Boykin v. Keycorp*, 521 F.3d 202, 215 (2d Cir. 2008) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1224 (3d ed. 2004)). Given the allegations of UFT's general unresponsiveness, Shied should not be penalized for resorting to information-and-belief pleading. The UFT has given the Court no reason to doubt the plausibility of the allegations concerning these employees' discussions with the UFT, or that information regarding what the employees told the UFT is peculiarly within the UFT's knowledge and control. Additionally, Shied's claims regarding her conversations with the four employees are sufficient, at the pleading stage, to support her infor-

mation-and-belief allegations of what these employees told the UFT.[4] Shied alleges that both teacher's assistants expressly told her that they each submitted letters on her behalf to the UFT. SAC ¶ 28. With respect to the other two employees, the teacher and the nurse, Shied alleges that they not only denied witnessing any misconduct, but went so far as to tell Shied that she should obtain counsel. *Id.* Based upon these conversations, it is reasonable for Shied to believe that the teacher and nurse would have told the same to the UFT. In any event, even if the two teacher's assistants were the only two employees to advise the UFT that they did not witness any abuse, that would suffice to contradict the UFT appeal representative's statement that the speech therapist's allegations were corroborated six-to-one. *Id.* ¶ 57. Finally, it does not seem implausible that the speech therapist, special representative and Director were friends, or unusual that the precise nature of their relationship is outside of Shied's direct knowledge. Accordingly, the Court is satisfied that those pleadings alleged on information and belief are well-pleaded allegations entitled to the presumption of truth.

In sum, Shied has stated a hybrid section 301/duty of fair representation claim. The allegations in the complaint establish the plausibility of both UCP's breach of the CBA and the UFT's breach of its duty of fair representation. In reaching this conclusion, the Court is certainly mindful of the broad deference afforded unions in deciding whether and to what extent to process a grievance. Indeed, the evidence may well prove that the UFT's conduct was well within the bounds of rationality. But Shied has done enough to push the inference of arbitrariness beyond the speculative level, which is all that is required at this stage. Accordingly, defendants' motions must be denied.

---

[4] It is of no moment that Shied has not provided the names of the employees who allegedly advised the UFT that they did not see the alleged abuse. As with every other individual discussed in the SAC, the allegations give sufficient notice of the identities of the advising employees by providing their job titles and the surrounding factual context.

## CONCLUSION

For the above reasons, the defendants' motion to dismiss the Second Amended Complaint under Rule 12(b)(6) is DENIED.

SO ORDERED.

Dated: September 12, 2012
       Brooklyn, N.Y.

                                                          s/CBA

                                            Carol Bagley Amon
                                            Chief United States District Judge